Loring, J.,
dissenting:
I dissent from the opinion read.
The collection of duties from.customs required a system of storage that would insure order and uniformity in all the ports of the country, and the earliest revenue laws established such a system.
The statutes of 1789, c. 5, and 1799, c. 22, directed that collectors should provide “ storehouses for the safe-keeping of goods,” and then specified in distinct provisions what goods should he stored in them. The statutes of 1818, c. 29, and 1819, c. 82, added spirituous liquors, wines, &c., and directed how they should be kept and how discharged from custody.
The acts of 1842, c. 35, and 1846, c. 84, enlarged this system of storage by adding to it the warehouse system. They made duties payable in cash, and provided for the entry of goods for warehousing under bonds for duties. And for these, and all unclaimed goods, they made specific arrangements as to the storehouses in which they should be kept, and as to how they should be held in custody and discharged from it; and they authorized the Secretary to make regulations for the same purposes.
■ Under the statutes, and regulations made by the Secretary, public and private bonded warehouses were established, some of which were owned, and others hired on leases, by the United States. They were divided into four classes, each of which was appropriated to “ the safe-heej/ing,” or storage, of specified goods, under the provisions and penalties of the statutes and regulations referred to.
Uhder the system of storage thus formed, the storehouses for the safe-keeping of goods were to be provided by the collectors, with the approval of the Secretary. The goods to be stored were specified in express provisions in the statutes and regulations, and were thus “required by law to be stored.” They wore withheld from entry for consumption, or not intended for it. They were received into custody, held in it, and discharged from it, in the particular manner prescribed by the statutes and regulations, and they paid to the United States rent or money for their safe-keeping.
*571 As these peculiarities attached to goods on storage under the revenue laws, they distinguished such goods from other goods, and from goods in the appraiser’s hands as plainly as from any; for these were not, and by the regulations referred to could not be, stored in the public or private bonded warehouses. They were not required by law to be stored by government, nor to be stored at all. They were not withheld from entry for consumption, for they are in the appraiser’s hands for the purpose, and in the act, of such entry. They were not subject to the provisions of law for the custody and the discharge from custody of goods on storage for safe-keeping, and they did not pay rent or money for safe-keeping. It was claimed that the statute of 1854, e. 32, recognized appraisers’ stores. This is true, but it distinguishes these from stores for the safe-keeping of goods. It speaks of the latter as “stores held by the United States for the purpose of storing warehoused or unclaimed goods of the former as “buildings or accommodations,” “required for the use of the United States appraisers for the due examination and appraisal of imported merchandise.”
I think all these things distinguish clearly between goods on storage and goods in the hands of appraisers, and as clearly between stores for safe-keeping, or houses for storage, and appraisers’ stores, and that they define “storage,” when used'in the revenue laws, to mean the safe-keeping of goods which by those laws “ are required to be stored by government.”
The resolution of February 14, 1850, is a revenue law, and passed for a temporary purpose. It is entitled “ a resolution limiting the expense of collecting the revenue for the present fiscal year.” The subject of the proviso is the leased bonded warehouses, which make a part of the system for storage or “the safe-keeping” of goods under the revenue laws, and therefore the terms of the proviso are to be construed in reference to that system.
The proviso authorized the Secretary to dispose of “the bonded warehouses now leased by government on or before the first of January next,” and it then gives the authority in question in these words : “But he may retain such parts of said houses, or lease such other houses, at his discretion, as may be necessary for the storage of unclaimed goods, or goods which for any other reason are required ly law to he stored hy government.”
I think that the authority to lease here given to the Secretary is, by the usual meaning of its terms and the rules of construction, and by the purpose of the proviso, confined to houses necessary for the *572 safe-heaping of goods “required to be stored” under the revenue laws. The houses to he leased are certainly to be used for the same purpose as the parts of the bonded warehouses to he retained; and, by the statutes and regulations, that was for the safe-keeping of goods, and nothing else.
The proviso contemplates the immediate disposal of the bonded warehouses leased by government. This would reduce at once the accommodations for storage in every port where such warehouses had been used; and (as I think to prevent any inconvenience that might arise from this) the Secretary was authorized to lease houses to be used as temporary substitutes for the bonded warehouses disposed of, and for such storage as they had furnished. And as the disposal of the warehouses was committed to him, so also was the remedy for its possible inconvenience as a part of the sam.e transaction.
It is observable that an appraiser’s store is entirely foreign to the purpose of the proviso, for by the regulations cited the bonded warehouses were used, not for appraisers, hut exclusively for storage, or the safe-keeping of goods; so that their disposal could not affect the existing accommodations for appraisers, or make any necessity for an appraiser’s store.
And if, under the proviso, the Secretary could lease houses for an appraiser’s store, so he might for a naval officer’s store, or a survey- or’s store, a weigher and gauger’s store, and in fact for an entire custom-house establishment in every port of the country. I can see nothing in the terms, purpose, or title of the proviso that suggests such an authority, or any authority beyond that I have described, viz : to supply any temporary deficiency in accommodations for storage which might he caxrstd by the contemplated disposal of the leased bonded warehouses.
The contract sued upon is for an appraiser’s store; the building to he leased is so denominated in the contract, and the specifications for its construction and arrangement show that it was intended for that, and for a different building in use, kind, and cost from a building necessary for storage merely.
For the reasons stated, I think that the Secretary waS not authorized by the proviso to make such a contract, and that therefore it is not the contract of the United States, and that they cannot he held liable upon it. The facts in evidence may make a case proper for the consideration of Congress, but I think they do not entitle the petitioner to a judgment here.